1

1    UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF ALABAMA
2         SOUTHERN DIVISION

3

4

5

6

7    BOBBY J. RADCLIFF, et al.,        *

8         Plaintiffs,            *

9   v.                      *    CA 06-345-CG-M

10   TATE & LYLE SUCRALOSE, INC.,    *
     et al.,
11 .                      *
          Defendants.
12                          *

13

14

15        The deposition of Rand Roslak, taken at the

16        law offices of Turner, Onderdonk, Kimbrough,

17        Howell, Huggins & Bradley, PA, 1359 Dauphin

18        Street, Mobile, Alabama, 36604, on the 15th

19        day of January, 2008, commencing at

EXHIBIT

20        approximately 8:54 a.m.

21

22

23

20  waived.

21          The submission of the deposition to the

22  witness for reading to or by him and the signing of the

23  deposition by him [Rule 30(e)] is not waived.

2

1          A P P E A R A N C E S

2

3  For the Plaintiffs:

4          BY:     HERNDON INGE, III, ESQ.
                   Post Office Box 40188
5                  Mobile, AL  36640
          Phone:    251.432.1444

6

7

8  For the Defendants:

9          BY:
                   HALRON W. TURNER, ESQ.
10                 MARC E. BRADLEY, ESQ.
                   Turner, Onderdonk, Kimbrough,
11                   Howell, Huggins & Bradley, PA
                   Post Office Drawer 1389
12                 Chatom, AL  36518
          Phone:    251.847.2237

13

14

15  Also present: Heidi R. Balsley, Esq.

16

17  Valerie B. Knapp, Court Reporter
    Mississippi CRS #1723

18

19

20

21

22

23

file:///Y|/MyFiles/client.hi/Radcliff/Miscellaneous/Rand%20Roslak%20depo.txt
:06-cv-00345-CG-M Document 162-3 Filed 04/03/08 Page 6 of 37 PageID

3

1                    I N D E X

2               E X A M I N A T I O N

3

4                              PAGE

5  By Mr. Inge                        6

6  Certificate of Reporter              36

7  Errata Page                    37

8  Witness Certificate Page            38

9

10                  I N D E X

11               E X H I B I T S

12

13                          PAGE

14  Plaintiff's Exhibit Number 1           6

15  Plaintiff's Exhibit Number 2          14

16  Plaintiff's Exhibit Number 3          16

17  Plaintiff's Exhibit Number 4          16

18  Plaintiff's Exhibit Number 5          18

19  Defendant's Exhibit Number 1            9

20

21

22

23

4

1          S T I P U L A T I O N

2

3          It is stipulated and agreed by and between

4   the parties hereto, through their respective counsel,

5   that the deposition of Rand Roslak, may be taken before

6   Valerie B. Knapp, Notary Public for the State at Large,

7   at the law offices of Turner, Onderdonk, Kimbrough,

8   Howell, Huggins & Bradley, PA, 1359 Dauphin Street,

9   Mobile, Alabama, 36604, on January 15, 2008.

10          It is further stipulated and agreed that this

11   deposition is taken pursuant to the Federal Rules of

12   Civil Procedure.  The provisions of Rule 32(d)(3)

13   dealing with waiver of errors and irregularities as to

14   the taking of the deposition apply fully to this

15   deposition.

16          Notice of the deposition and any errors or

17   irregularities therein [Rule 32(d)(1)] and any

18   objections to the qualifications of the officer before

19   whom this deposition is taken [Rule 32(d)(2)] are

5

1       Filing of the original of the transcript of

2   this deposition [Rule 30(f)(1)] is waived.

3       Any other technicality or defect in the

4   taking of this deposition not otherwise covered by the

5   terms of this stipulation are waived.

6

7                  * * * * * * * * *

8

9       I, Valerie B. Knapp, Commissioner and Court

10   Reporter, certify that on this date, as provided by the

11   Federal Rules of Civil Procedure and the foregoing

12   stipulation of counsel, there came before me at the law

13   offices of Turner, Onderdonk, Kimbrough, Howell,

14   Huggins & Bradley, PA, 1359 Dauphin Street, Mobile,

15   Alabama, 36604, on January 15, 2008, commencing at 8:54

16   a.m, Rand Roslak, witness in the above cause, for oral

17   examination, whereupon the following proceedings were

18   had:

19

20

21

22

23

6

1          RAND ROSLAK,

2      the witness, having been duly sworn to tell

3 the truth, the whole truth, and nothing but the truth,

4 was examined and testified as follows:

5        MR. TURNER: Usual stipulations, except

6      the witness will read and sign.

7         EXAMINATION

8 BY MR. INGE:

9    Q   State your name for the Court, please, sir.

10    A   It's Rand, R-A-N-D, P, as in Peter, Roslak,

11 R-O-S-L-A-K.

12    Q   And Mr. Roslak, are you over 19 and a

13 permanent resident of either Mobile County or

14 Washington County?

15    A   Yes.

16       (PLAINTIFF'S EXHIBIT NUMBER 1

17       MARKED FOR IDENTIFICATION.)

18 BY MR. INGE:

19    Q   I'm showing you Plaintiff's Exhibit 1.

20      And have you seen that or have your lawyers

21  told you about the contents of the notice of

22  deposition?

23     A   Yes.

7

1    Q    And are you here as the representative of the

2    defendant to testify about the receipt and acceptance

3    of delivery and external transfer of DMA for the Tate &

4    Lyle plant?

5    A    Yes.

6    Q    In the notice of deposition -- and has this

7    Plaintiff's Exhibit 1, the notice of deposition, that

8    has either been shown to you or has been explained to

9    you?

10             MR. TURNER:  He has reviewed it.

11             THE WITNESS:  Yes.

12   BY MR. INGE:

13   Q    Have you had an opportunity to organize the

14   documents requested in the duces tecum to this notice

15   about the blueprints and drawings and schedules and

16   schematic drawings and that sort of thing?

17             MR. TURNER:  Let me answer that

18        question, Herndon.

19             There have been several requests for

20          production propounded by the plaintiffs in

21          this litigation to the defendant, Tate &

22          Lyle, whom I represent. And we have

23          responded to all of those and have produced

8

1        thousands of pages of documents.

2             Mr. Roslak, given his position at Tate &

3        Lyle, assisted with the collection of all

4        those documents over the entire period of

5        time that this lawsuit has been pending.  And

6        those documents have been given to the

7        plaintiffs.

8             There was no additional work done either

9        by Mr. Roslak or the lawyers for Tate & Lyle

10       in connection with the duces tecum in the

11       deposition notice, which is Plaintiff's

12       Exhibit 1 to this deposition.

13            In other words, we didn't go out and

14       look for any additional documents other than

15       what we had already given y'all in connection

16       with that.

17            So he has done no work in looking for

18       documents since the receipt of this

19       deposition notice.

20          MR. INGE:  Okay.

21          MR. TURNER:  We think to some extent

22      many of the documents that you've requested

23      in 1 have already been provided to you.

file:///Y|/MyFiles/client.hi/Radcliff/Miscellaneous/Rand%20Roslak%20depo.txt

9

1          MR. INGE:  Okay.

2          MR. TURNER:  And for the record -- so I

3     can get this on the record and then we'll go

4     on, we did file an objection to your notice,

5     which I'll mark as Defendant's Exhibit 1 and

6     just make it part of the record to this

7     deposition.

8          MR. INGE:  Okay.

9          (DEFENDANT'S EXHIBIT NUMBER 1

10          MARKED FOR IDENTIFICATION.)

11   BY MR. INGE:

12     Q   Now, Mr. Roslak, just as background, without

13   having --

14     I'm an English major.

15     And can I just call it DMA?

16     A   Yes.

17     Q   I mean, we know what DMA is, we know that

18   engineers and chemists know the long proper name.  But

19   for our purposes today can we just call it DMA?

20    A    That's fine.

21    Q    Okay.  Is DMA an unwanted byproduct of the

22    Sucralose chemical process?

23    A    Yes.

20    Q    All right. And remember, Mr. Roslak, I'm

21    sure you've been told many times there is a

22    confidentiality order, a protective order. I don't

23    want trade secrets, I'm not asking trade secrets. And

18   Q.   Okay.   Can you feel DMA like a solid or a

19   liquid?

10

1    Q   I mean, is that a starting point?

2    A   It is a byproduct.

3    Q   Okay.  And as I understand, DMA is not

4   purchased and brought on the plant site?

5    A   That's correct.

6    Q   And it's not the end product of the Tate &

7   Lyle chemical engineering process?  It's not the

8   intended or target end product of the process.  Is that

9   right?

10    A   That's correct.

11    Q   Okay.  Then, we don't need to talk about the

12   loading or unloading or -- excuse me.  I withdraw that.

13   We don't need to talk about the unloading of DMA

14   brought in the plant, we just need to talk about it

15   within the plant chemical process.  Okay?

16        MR. TURNER:  Object to the form.

17        You can answer.

18        THE WITNESS:  That's correct.

19   BY MR. INGE:

11

1   if you get --

2         And I'm sure you've been instructed.

3         If you get to that point that you say this is

4   a trade secret, then confer with counsel.  But I don't

5   want -- you know, I don't want us to step over into

6   that slippery slope of any proprietary or trade secret

7   area.  Okay?

8     A   I understand that.

9     Q   Okay.  Now, is DMA produced or generated as a

10  solid, a liquid or a gas?

11         MR. TURNER:  You're talking about at the

12         plant in McIntosh?

13  BY MR. INGE:

14    Q   Within the plant in McIntosh.

15    A   It's both a liquid and a gas.

16    Q   Okay.  Can you smell DMA?

17    A   At certain concentrations you can.

20          MR. TURNER: Object to the form.

21          THE WITNESS: If it's in a liquid form I

22    assume you could feel it.

23          As a gas, it's similar to air.

12

1    BY MR. INGE:

2        Q   Okay.  Can you see it?  Can you see it like

3    smoke or a flare or a flame or something like that?

4            MR. TURNER:  Object to the form.

5            THE WITNESS:  Not that I'm aware of.

6    BY MR. INGE:

7        Q   Okay.  Can you hear it like a pressure relief

8    valve, a gas escaping, a loud blast or something like

9    that?

10           MR. TURNER:  Object to the form.

11           THE WITNESS:  If it were a gas escaping

12       through a relief valve you'd most likely be

13       able to hear it then.

14           It's similar to air venting off because

15       it is a gas.  It can be a gas.

16   BY MR. INGE:

17       Q   But the most common way to experience or --

18   well, experience DMA is through the nose, the smelling

19   process, right?

20          MR. TURNER: Object to the form.

21          THE WITNESS: At certain concentrations,

22     yes.

23

13

BY MR. INGE:

2    Q  Okay. Now, before we -- well, tell me

3  whether -- so as I understand DMA, it's an unwanted

4  byproduct in the chemical process. So -- and I don't

5  really want to know about the piping process at Tate &

6  Lyle.

7       But in your best estimate is DMA produced in

8  the first third or the first fourth or the middle third

9  or the middle fourth or --

10   A  I guess -- there's not a middle fourth,

11  but --

12   Q  -- or the final third of the piping system,

13  the chemical generating system in the Tate & Lyle

14  plant?

15       MR. TURNER: Object to the form.

16       You can answer.

17       THE WITNESS: If you look at the

18      process, in my mind I break it down into four

19      sections.

20          And the majority of the DMA is made in

21      the third of those four sections of the

22      process.

23

14

1                (PLAINTIFF'S EXHIBIT NUMBER 2

2                MARKED FOR IDENTIFICATION.)

3  BY MR. INGE:

4    Q   Okay.  Now, with -- well, first of all, I'd

5  ask you to review Plaintiff's Exhibit 2.

6    A   (Witness complies.)

7    Q   And what is that?

8    A   That's an aerial photo of the plant site in

9  McIntosh.

10   Q   All right.

11        MR. TURNER:  And I would suggest that to

12      the extent you want to use that, I have the

13      aerial here.  It may be a lot easier and less

14      confusing to the extent you need to use the

15      photograph to talk to him.

16        MR. INGE:  Okay.

17        MR. TURNER:  It's right behind me.

18        MR. INGE:  Okay.

19  BY MR. INGE:

20     Q    Mr. Roslak, what I'm going to get you to

21   do --

22          What I'm going to get you to do is -- can I

23   get you to -- I believe you testified that the majority

15

1  of it, of the DMA is produced in the middle -- in the

2  third quarter of the chemical process.

3       Is DMA generated at a place other than the

4  third quarter of the piping scheme of the plant?

5       MR. TURNER:  Object to the form.

6       You can answer.

7       THE WITNESS:  There's a small amount

8       made in the first quarter of the process.

9       There's probably an equally small amount made

10      in the second quarter of the process.

11  BY MR. INGE:

12  Q  Okay.

13  A  And then it's in that third quarter where the

14  bulk of the DMA is produced, in that process.

15  Q  Okay. Is that -- well, first of all, let me

16  go ahead and show you all three -- well, all four of

17  the schematic drawings I could find or maps or aerial

18  photographs that I could find.

19      And we talked about Plaintiff's Exhibit 1.

20          Is Plaintiff's Exhibit 2, is that --

21               MR. BRADLEY:  You've got your numbers

22      messed up.

23               MR. TURNER:  Number 1 was the deposition

16

1        notice, 2 was the aerial so you're on 3.

2            (PLAINTIFF'S EXHIBIT NUMBER 3

3            MARKED FOR IDENTIFICATION.)

4    BY MR. INGE:

5        Q    Is 3 the complete chemical piping process at

6    the Tate & Lyle plant?

7            In other words, can we use this as a basic

8    flow chart of the chemicals in the process?

9        A    No.

10       Q    Okay.  As I understand, Plaintiff's Exhibit 3

11   is just a partial flow chart of the chemical process.

12   Is that right?

13       A    That's correct.

14           (PLAINTIFF'S EXHIBIT NUMBER 4

15           MARKED FOR IDENTIFICATION.)

16   BY MR. INGE:

17       Q    All right.  And if you'll look at Plaintiff's

18   Exhibit 4, I'll ask you if you recognize that, the

19   second page particularly.

20          Is that too small to be helpful?

21    A    Yeah.

22          I have no idea what this is.

23    Q    Okay.

17

```
 1    A   Just looking, it's so small.  I can't read

 2  the writing on it.

 3    Q   Okay.

 4    A   I don't recognize what this is a depiction

 5  of.

 6    Q   Okay.

 7         MR. TURNER:  The reason for that may be

 8      is that may be a document generated by a

 9      prior company.

10         THE WITNESS:  I see what it is now.

11      It's an extremely high altitude look of

12      this.

13  BY MR. INGE:

14    Q   In other words, shouldn't we use Plaintiff's

15  Exhibit 2 for locations rather than Plaintiff's Exhibit

16  4?

17    A   This is correct.  I believe so because this

18  is a very small depiction of this because this long

19  building here is this (indicating) and then you've got
```

20  the two pipe racks coming out this way.

21      Q  Okay.  Then we'll retire Plaintiff's Exhibit

22  4.

23

18

1              (PLAINTIFF'S EXHIBIT NUMBER 5

2            MARKED FOR IDENTIFICATION.)

3   BY MR. INGE:

4      Q   Now, if you'll look at 5, is this helpful?

5          And all I want to do is locate approximately

6   the generation of -- in the first, second and third

7   fourths of the piping process.

8          Is Plaintiff's Exhibit 5, is that helpful?

9          And I think it's two pages.

10     A   Not for doing what you just described.

11     Q   Okay.  Then I'll retire 5.

12         MR. TURNER:  Let me ask him a question.

13            (OFF THE RECORD.)

14         MR. TURNER:  Plaintiff's Exhibit 3,

15         Herndon, which y'all briefly covered, really

16         only relates to phosgene.  It was a document

17         we produced back when we thought we were

18         litigating phosgene, which has now been

19         dropped.

20          And he indicates to me that it would

21    probably not be useful at all in the

22    discussion of DMA.

23          MR. INGE:  Okay.