**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BOBBY L. RADCLIFF, *et al.,* | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 06-345-CG-M |
| TATE & LYLE SUCRALOSE, INC., | : | |
| Defendant. | : | |
| | : : : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant Tate & Lyle Sucralose, Inc. ("Tate & Lyle"), by and through its undersigned

counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and

7.2, respectfully submits this memorandum in support of its renewed motion for summary

judgment.

**INTRODUCTION**

Plaintiffs allege that obnoxious odors and/or noises emanate from Tate & Lyle's

manufacturing plant and invade their properties, causing various physical injuries,[1] emotional

distress and/or loss of use and enjoyment of property, and property diminution.  With respect to

odor, Plaintiffs allege that dimethylamine ("DMA"), an unwanted chemical by-product from

---

[1]  Although Plaintiffs do not seek damages for their alleged physical injuries, they claim and
intend to offer testimony that the odors allegedly stemming from Tate & Lyle's plant cause such
physical injuries in order to support their nuisance cause of action and claims for emotional
distress damages.  (*See* Transcript from Aug. 18, 2008 Pretrial Conference, p. 20-22).  Therefore,
Plaintiffs' ability to prove proximate causation of these claimed physical injuries is imperative to
their nuisance claim and alleged damages.  See, e.g., Marsh & Gamble, *Alabama Law of
Damages* (5th ed.), § 31.6 (in a nuisance case, where there is a physical injury to the plaintiff, he
may recover for incidental mental distress and suffering, but "[t]he condition precedent to the
recovery of mental suffering is *proof of actual physical injury*") (emphasis added).

Tate & Lyle's sucralose manufacturing operations, is emitted from the plant into the ambient air and carried by prevailing winds onto or across Plaintiffs' properties, thereby causing their alleged physical injuries and/or interference with use and enjoyment of property.  (Doc. #161). Plaintiffs relied on the testimony of their expert, James Montgomery, to establish that DMA is emitted from Tate & Lyle's plant in sufficient quantities to cause their alleged injuries and damage.  (Doc. #108, 121, 161).

Tate & Lyle previously filed a motion for summary judgment on all Plaintiffs' claims, arguing that *even with* Mr. Montgomery's testimony, Plaintiffs failed to establish the requisite element of causation.  (Doc. #142, p. 25-35, Doc. #163, p. 19-23) (noting that even if one accepts Mr. Montgomery's hypothesis, which Tate & Lyle does not, he could point to no evidence to support it, *i.e.* from April 2004 to present, there were no stack or fugitive DMA emissions of sufficient quantity to cause an obnoxious odor and/or adverse health effect at Plaintiffs' properties).  In response to Tate & Lyle's motion, Plaintiffs offered additional testimony from Mr. Montgomery via an affidavit.  (Doc. #161, 162-2).  Tate & Lyle asked the court to strike such affidavit in its reply in support of summary judgment.  (Doc. #163, p. 13-19).  Then, pursuant to the court's standing order governing the pre-trial conference (Doc. #165-2, p. 3), but prior to the court's ruling on Tate & Lyle's motion for summary judgment, Tate & Lyle filed its Daubert motion to exclude the testimony of Mr. Montgomery in its entirety.  (Doc. #172).[2]

In ruling on Tate & Lyle's summary judgment motion, the court did not consider Mr. Montgomery's affidavit, and therefore denied Tate & Lyle's motion to strike it as moot.  (Doc.

---

[2]  Given the timing of the summary judgment briefing and the deadline for Daubert motions under the pre-trial standing order, and because Tate & Lyle's motion for summary judgment argued that Plaintiffs' claims failed even with Mr. Montgomery's testimony, Tate & Lyle's Daubert motion asked only that Mr. Montgomery's testimony be excluded at trial, not for purposes of summary judgment.  (Doc. #172, p. 14).

#176, n. 3).  The court apparently did consider Mr. Montgomery's original testimony and opinion evidence, however.  (Id.) (noting that the court would not consider Tate & Lyle's Daubert motion at this juncture since plaintiffs had not yet responded to it and because the motion asked for the exclusion of Mr. Montgomery's testimony at trial, not on summary judgment).  Indeed, in considering Tate & Lyle's causation argument, the court explained that Plaintiffs had testified to an unpleasant odor from Tate & Lyle's plant which caused them loss of use and enjoyment of property, and the experts (and Plaintiffs) disagreed as to whether Tate & Lyle was the source of the odor.  (Id.)  The court determined that it was up to the jury to sort out these factual disputes, and granted only partial summary judgment in favor of Tate & Lyle, allowing Plaintiffs' claims for nuisance and injunctive relief to go forward.  (Id., p. 11-12).

On November 25, 2008, the court granted Tate & Lyle's Daubert motion to exclude the testimony of Mr. Montgomery at trial.  (Doc. #190).  Thus, unlike at the prior summary judgment stage, Plaintiffs no longer have expert evidence regarding the source of the alleged obnoxious odor on their properties and/or the cause of their physical injuries.  Plaintiffs' only evidence that Tate & Lyle is the cause of the odor on their properties and/or their alleged injuries is their lay opinions.  As explained below, this is insufficient to defeat summary judgment.

With respect to noise, Plaintiffs did not offer and will not rely on any expert testimony regarding the source of the noise(s) allegedly interfering with their use and enjoyment of property.  Again, Plaintiffs' only evidence that Tate & Lyle is the source of such noise is their lay opinions.  This also is insufficient to defeat summary judgment, especially when compared to Tate & Lyle's (unrefuted) scientific data and expert opinion showing why any noise interference at Plaintiffs' properties must come from sources other than Tate & Lyle.

## <u>STANDARD OF REVIEW</u>

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990) (citation omitted). <u>See also</u> <u>Dickinson v. Springhill Hosp., Inc.</u>, 397 F.Supp.2d 1337, 1340-41 (S.D.Ala. 2005) ("The purpose of summary judgment 'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'") (citation omitted).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." <u>Connally v. Sears Roebuck & Co.</u>, 86 F.Supp.2d 1133, 1136 (S. D. Ala. 1999) (citation omitted). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. <u>Id.</u> If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." <u>Id.</u> (citation omitted).

"The factual disputes raised by the nonmoving party must be both *material and genuine.*" Connally, 86 F.Supp.2d at 1136 (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> (citation omitted). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the

record.  Id. at 1136-37 (citations omitted); accord Earley, 907 F.2d at 1080 ("The mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff.") (citation omitted).

## ARGUMENT

For Plaintiffs to have an actionable nuisance (and/or derivative injunctive relief) claim,

they must prove proximate causation of their injuries.  See Tipler v. McKenzie Tank Lines, 547

So.2d 438, 440 (Ala. 1989) (a nuisance "must comport with the classical tort concepts of duty

and causation") (citation omitted).  While causation is generally an issue for the jury, the trial

court should displace a jury's consideration of causation where there is a lack of substantial

evidence from which the jury could reasonably infer a causal connection between the

defendant's conduct and the alleged resulting injury.  Hilliard v. Huntsville Elec. Util. Bd., 599

So.2d 1108, 1110 (Ala. 1992); see also Keller v. Kiedinger, 389 So.2d 129, 133 (Ala. 1980)

(when reasonable men cannot differ, questions of proximate cause are matters of law for the

court to decide).

**I.    Plaintiffs' claims require expert testimony to satisfy the causation element.**

Evidence of proximate causation in this case – for both odor and noise – requires

scientific or expert testimony.  (See Doc. #142, p. 25-26) (citing cases).[3]  Plaintiffs' allegations

involve scientific issues that are beyond the experience of laymen.  Plaintiffs allege that DMA, a

chemical by-product from Tate & Lyle's sucralose manufacturing process, is released into the

environment in sufficient quantities so as to exceed certain threshold limit values at Plaintiffs'

properties at least 3,300 feet away, thereby causing certain physical symptoms among Plaintiffs

---

[3]   In the interest of brevity, Tate & Lyle incorporates and relies on as if fully set forth herein the
authorities it cited and relied on in its prior motion for summary judgment with respect to
Plaintiffs' failure to establish causation.

and/or interference with the use and enjoyment of property.  Plaintiffs fail to present any evidence or otherwise suggest that lay jurors are familiar or have experience with DMA, any odor(s) associated with various levels of DMA, how DMA is emitted from Tate & Lyle's plant, how such emissions travel through the ambient air as affected by various meteorological or topographical factors, what threshold limit values are, or whether DMA exposure at various levels can or does cause certain adverse health effects.  Clearly such issues require expert opinion and without it, Plaintiffs fail to satisfy their burden to overcome Tate & Lyle's motion.

The case of <u>Satterfield v. J.M. Hubber Corp.</u>, 888 F.Supp 1567 (N.D.Ga. 1995) is directly on point.  In <u>Satterfield</u>, plaintiff homeowners brought suit against the defendant operator of an oriented strand board plant, claiming that airborne pollutants, odors and/or noise from the plant caused them various physical injuries, property damages, diminution in property, and emotional distress.  <u>Id.</u> at 1569.   Plaintiffs brought causes of action for trespass, nuisance, and negligence.  Defendant moved for summary judgment, arguing plaintiffs lacked sufficient causation evidence to meet their burden on summary judgment.  <u>Id.</u>  With respect to the nuisance claim, plaintiffs argued their own testimony that they saw smoke from defendant's plant invade their properties was sufficient evidence of causation to survive summary judgment.  <u>Id.</u> at 1572.  The court disagreed:

> Beyond the significant causation problems cited above, plaintiffs have again failed to introduce *any* form of expert testimony or scientific evidence that the source of the alleged noise, airborne pollutants and odor is emanating from defendant's plant.  This is particularly relevant in light of the numerous alternative sources for such invasions in the immediate area surrounding plaintiffs' property.   Here, the court finds that because of the considerable distance between defendant's plant and plaintiffs' residence, that their lay testimony is not "rationally based on the perception of the witness."  FED. R. EVID. 701.  There are numerous admissions in the record by plaintiffs that they cannot see defendant's plant from their residence and that they are not substantially certain where dust, noise and odors around their residence are coming from.  Therefore, without *any* expert testimony or scientific evidence, the

> court finds that plaintiffs fail to meet their burden as to causation on behalf of defendant.
>
> Further, the court finds that plaintiffs have failed to introduce sufficient evidence of damages in this case. Because of their problems with causation in relation to their physical injuries, plaintiffs cannot recover damages for physical injury. Also, without proof of physical injuries, plaintiffs cannot recover damages for their alleged mental injuries. [Citation omitted].

Id. at 1572-73 (emphasis in original).

Also on point is Layton v. Yankee Caithness Joint Venture, 774 F.Supp. 576 (D.Nev. 1991). In Layton, homeowners brought a nuisance claim against the operator of a geothermal power plant, alleging that the plant emitted hydrogen sulfide which caused an odor on their properties and various physical symptoms like headaches, bloody noses, dizziness, sore throats, coughing, nausea and irritated eyes. Id. at 578-79. The defendant moved for summary judgment, arguing lack of evidence of causation. The court agreed, explaining:

> Plaintiffs have presented no evidence other than their own lay testimony to show that the hydrogen sulfide which is invading their property comes from the YCJV plant. Stated another way, Plaintiffs have failed to present any competent evidence that odors from the YCJV plant have invaded their property at all. Plaintiffs have shown that the YCJV plant emits some hydrogen sulfide and that some hydrogen sulfide is present in the ambient air around their homes. They have failed to show a causative link between the ambient hydrogen sulfide around their homes and any emissions from the YCJV plant. This lack of evidence of causation is fatal to Plaintiffs' claim.
> * * *
> Neither the Plaintiffs nor the court can simply assume that the smell surrounding Plaintiffs' homes emanates from the YCJV plant. Plaintiffs have failed to present sufficient allegations that emissions from the YCJV plant have invaded their property. Without competent scientific evidence that the YCJV plant is the source of the hydrogen sulfide smell around Plaintiffs' homes, the nuisance action based on emission of hydrogen sulfide must be dismissed.

Id. The Layton court also found noteworthy the defendant's evidence that the plant never exceeded applicable federal or local standards for the emission of hydrogen sulfide, and in fact, received operating approval from all necessary agencies. Id. at 579.

Regarding the plaintiff's claimed physical injuries as a result of exposure to hydrogen sulfide, the court noted that none of the plaintiffs offered any medical records or other documentary evidence to show that they sought medical treatment for their symptoms.  Id. at 579.  And while some plaintiffs testified that they did seek treatment, none of these plaintiffs offered any affidavits, diagnoses, testimony or other records from their doctors linking their injuries to exposure to hydrogen sulfide.  Id. at 579.  On these facts, the court held that plaintiffs failed to present sufficient causation evidence of their claimed injuries:

> Headaches, nosebleeds, dizziness and eye irritation may have many causes. Analyzing the toxic effects of exposure to hydrogen sulfide, and diagnosing the cause of headaches, nosebleeds, dizziness and eye irritation are beyond the common knowledge of the lay person. Therefore, expert testimony is required to prove a causal relationship between the hydrogen sulfide from the YCJV plant and the physical injuries suffered by Plaintiffs. The unrefuted evidence in this case shows the absence of causation between the emissions from the plant and Plaintiffs' complaints of physical injuries.

Id. at 580.

The same is true here.  Plaintiffs have no expert evidence that the odors and/or noise allegedly causing their injuries or damages come from Tate & Lyle, and Plaintiffs' lay testimony is insufficient.  Notably, like the Satterfield plaintiffs, Plaintiffs cannot see Tate & Lyle's plant from their properties as the two are separated by approximately 3,000 feet of pine trees and Norfolk Southern Railway's railroad tracks.  (Doc. #142, p. 10-11).  Also, unlike the Satterfield plaintiffs who testified they physically saw smoke emanating from the defendant's plant onto their properties (yet *still* failed to submit sufficient causation evidence to overcome defendant's summary judgment motion), here no Plaintiff physically witnessed DMA being emitted from Tate & Lyle's plant or otherwise traveling through the ambient air onto his or her property; nor did any Plaintiff actually witness or observe any noises originating from within the plant.

Rather, all Plaintiffs either admit they do *not* know the cause or source of any odor or noise on their properties, or attribute such odors and/or noises to Tate & Lyle simply because such odor or noises were non-existent or less frequent or severe prior to Tate & Lyle's takeover of the plant in 2004.[4]  Such testimony from Plaintiffs – that the odors and/or noises preceded Tate & Lyle's takeover of the plant – confirms alternative sources of such alleged nuisances, a significant factor considered by the <u>Satterfield</u> court when determining that the plaintiffs failed to present sufficient evidence of causation to overcome summary judgment.  Indeed, the railroad tracks are clear evidence of an alternative source of any alleged noise nuisance.  The existence of such alternative sources, as well as the distance and topographical nature of the landscape separating Plaintiffs' homes from Tate & Lyle's plant, renders Plaintiffs' testimony that Tate & Lyle is the cause of their complaints not "rationally based on the perception of the witness." <u>Satterfield</u>, 888 F.Supp. 1572-73 (citing FED. R. EVID. 701).

Moreover, as in <u>Layton</u>, although Plaintiffs claim physical injuries from DMA emitted from Tate & Lyle's plant, such as sinus or breathing problems, allergies, eye irritation, and/or pulmonary damage (Doc. #59, ¶ 27(b)), without Mr. Montgomery, they have no scientific or specialized evidence linking their physical injuries to Tate & Lyle.  (Doc. #142, p. 10).  As in <u>Layton</u>, Plaintiffs' alleged physical problems may have many causes.  Analyzing the toxic effects of exposure to DMA, and diagnosing the cause of Plaintiffs' injuries are beyond the

---

[4]  <u>See</u> Doc. #142, <u>Exh. I-01</u>, p. 57:19-58:23, 72:23-75:10; <u>Exh. I-02</u>, p. 46:17-48:13; <u>Exh. I-03</u>, p. 94:14-95:15; <u>Exh. I-04</u>, p. 58:12-60:1; <u>Exh. I-05</u>, p. 63:8-64:9, 71:4-72:22; <u>Exh. I-06</u>, p. 36:10-20, 38:1-10, 51:4-9; <u>Exh. I-07</u>, p. 30:7-18, 34:12-15; <u>Exh. I-08</u>, p. 49:22-50:4; <u>Exh. I-09</u>, p. 17:23-18:14; <u>Exh. I-10</u>, p. 68:12-69:15; <u>Exh. I-11</u>, p. 59:3-61:11; <u>Exh. I-12</u>, p. 58:16-59:20; <u>Exh. I-13</u>, p. 44:2-16, 58:17-19; <u>Exh. I-14</u>, p. 51:17-53:1; <u>Exh. I-6</u>, p. 53:1-14; <u>Exh. I-17</u>, p. 47:21-48:2, 48:12-18; <u>Exh. I-18</u>, p. 103:4-105:16; <u>Exh. I-19</u>, p. 47:3-48:7; <u>Exh. I-20</u>, p. 17:19-22; <u>Exh. I-21</u>, p. 40:1-7, 50:4-52:7; <u>Exh. I-22</u>, p. 25:1-26:17; <u>Exh. I-23</u>, p. 19:7-12; <u>Exh. I-24</u>, p. 57:16-21; <u>Exh. I-25</u>, p. 45:18-46:2; <u>Exh. I-26</u>, p. 81:14-82:19, 86:4-87:1; <u>Exh. I-27</u>, p. 34:9-35:5; <u>Exh. I-29</u>, p. 40:21-43:1; <u>Exh. I-30</u>, p. 94:8-15, 103:11-17; <u>Exh. I-31</u>, p. 23:2-7; <u>Exh. I-32</u>, p. 28:18-30:14; <u>Exh. I-33</u>, p. 20:9-13; <u>Exh. I-34</u>, p. 53:11-55:19; <u>Exh. I-35</u>, p. 83:18-85:5; <u>Exh. I-37</u>, p. 14:13-17.

common knowledge of the lay person.  Since Plaintiffs rely on their alleged physical injuries in support of their nuisance claim and mental anguish damages, they must present medical or scientific testimony on the cause of such injuries; their lay opinions are unsupported and insufficient.

Finally, as in Layton, since Tate & Lyle's operations began in April of 2004, the plant has operated pursuant to and in accordance with all necessary governmental oversight and approval.  (Doc. #142, p. 3).  No entity has cited Tate & Lyle for violation of any environmental statute, regulation, environmental or operational permit, or other governing law relating to air or noise emissions.  (Id.)  Thus, even construing all facts and making all reasonable inferences in the light most favorable to Plaintiffs, their lay testimony fails to overcome the overwhelming majority of admissible evidence that suggests there is no causative link between Tate & Lyle's activities and Plaintiffs' claimed injuries.  Layton, 774 F.Supp. at 580.

To put it another way, this is not a hog farm case where the alleged odor and interference is generally known among lay persons and the plaintiff likely does not need expert evidence.  This case involves an odor and physical injuries allegedly stemming from a chemical by-product that is particular to Tate & Lyle's sucralose manufacturing process.  Neither Plaintiffs nor the court can simply assume that any smell at Plaintiffs' properties comes from Tate & Lyle, or that such odor is sufficient enough in quantity and duration to exceed health based levels or cause certain physical symptoms.  Plaintiffs must present sufficient scientific evidence of causation, as these are issues that are not within a layman's knowledge or experience, and cannot be established simply through the lay testimony of Plaintiffs, especially when weighed against Tate & Lyle's expert and non-expert evidence that Tate & Lyle is not the source of any odor or alleged injuries.  (Doc. #142, p. 3); (Doc. #163, p. 4).

Similarly, this is not a barking dog case where the issue of noise might be fit for laymen without expert or scientific evidence.  As in <u>Satterfield</u>, it is not enough for Plaintiffs to testify that they hear noises at their properties which interfere with their use and enjoyment.  They must prove that Tate & Lyle is the *source* of such noises and that the noises rise to the level required for legal liability, *i.e.* that which would affect an ordinary, reasonable person and not just one of fanciful or fastidious taste.  Neither Plaintiffs nor the court can assume that Tate & Lyle is the source.[5]

While a lay person likely has knowledge or experience with noise from a railway train or perhaps even from a manufacturing facility, the decibel levels associated with such noises, especially as compared to the decibel levels of *admitted alternative noise sources*, and/or as affected by the distance or topography between a noise source and the location of Plaintiffs' properties, is outside lay knowledge or experience.  Plaintiffs' lay testimony that they attribute the noise to Tate & Lyle simply because of proximity in time is insufficient to withstand summary judgment, especially when weighed against Tate & Lyle's scientific data and expert evidence that the decibel level of any noise from Tate & Lyle's plant, as measured at Plaintiffs' properties, pales in comparison to the decibel levels of several other noise sources which are closer to Plaintiffs' properties.  (Doc. #142, p. 11-12).

With Plaintiffs' expert testimony excluded in its entirety and/or otherwise wholly absent from this case, there is no *material or genuine* factual dispute as to the essential element of causation, and Tate & Lyle's motion is due to be granted.  <u>Satterfield</u>, <u>Layton</u>; <u>See also</u> <u>Colony Holdings, Inc. v. Texaco Refining and Marketing, Inc.</u>, 2001 WL 1398403 (C.D.Cal. Oct. 29, 2001) (granting summary judgment in favor of defendant on plaintiff's trespass and nuisance

---

[5]  Indeed, as noted, many Plaintiffs admit they do not know the source of the noises heard on their properties.  <u>Supra</u> at n. 4.

claims after granting defendant's <u>Daubert</u> motion to exclude plaintiff's expert because plaintiff lacked other sufficient evidence of causation).

**II.** **<u>Any other proffered evidence is insufficient evidence of causation to withstand summary judgment.</u>**

To the extent Plaintiffs claim that they have evidence of causation other than Mr. Montgomery's testimony sufficient to withstand summary judgment, they are mistaken.  The only other evidence offered by Plaintiffs to show that DMA is emitted from Tate & Lyle's plant in sufficient quantities to cause the alleged odor and/or their physical symptoms are the testimony of Tate & Lyle employee Rand Roslak and various material safety data sheets (MSDS).  (Doc. #161).   For all of the reasons previously set forth by Tate & Lyle, these are insufficient to show causation here.  (Doc. #163, p. 1-4).[6]

At most, Mr. Roslak's testimony establishes that a handful of *de minimis* leaks of DMA have been detected over the past three years.  (Doc. #163, p. 3).  Such testimony falls woefully short of establishing that DMA was emitted from Tate & Lyle's plant in sufficient quantities to cause an obnoxious odor at Plaintiffs' properties or Plaintiffs' physical symptoms.  To the contrary, the data underlying Mr. Roslak's testimony clearly establishes otherwise.  (Doc. #163, p. 4) (noting that over the past three (3) years, the DMA processing equipment experienced a leakage rate of less than 0.2%, well less than applicable regulations, and that when these leaks are combined with regulated stack emissions, the total level of DMA at any Plaintiff's property could be no more than 0.0000846 ppm, well less than the odor threshold of 0.34 ppm and the health threshold, or TLV, of 10 ppm).

---

[6] Again, for the sake of brevity, Tate & Lyle incorporates and relies on as if fully set forth herein its discussion of Mr. Roslak's testimony and the MSDSs as set forth in its reply in support of its motions for summary judgment.

Thus, as in <u>Layton</u>, Mr. Roslak's testimony simply confirms that the plant does emit (minimal) DMA, and therefore DMA may be present in the ambient air immediately surrounding the plant. However, this fails to show a causative link between the alleged odor at Plaintiffs' homes and/or their physical symptoms and any emissions from the Tate & Lyle plant, especially when considered against Tate & Lyle's evidence otherwise. <u>Layton</u>, 774 F.Supp. at 578-580.

Plaintiffs fare no better with the MSDSs. While these documents contain general data on the properties of DMA and the possible health effects associated with exposure to DMA, they are based on *workplace* exposure, *i.e.* physically handling or working with DMA at close range, over a continuous eight (8) hour period. (Doc. #163, p. 1-2). They do nothing to establish Plaintiffs' actual DMA exposure (if any), or whether such exposure was of enough quantity or duration to cause any adverse health effect. Thus, these documents are insufficient to withstand summary judgment, especially when considered against Tate & Lyle's expert opinion that any DMA on Plaintiffs' properties was significantly less than any odor or health based level. <u>See</u> <u>Wright v. Willamette Indus., Inc.</u>, 91 F.3d 1105, 1107 (8th Cir. 1996) ("It is therefore not enough for a plaintiff to show that a certain chemical agent sometimes causes the kind of harm that he or she is complaining of. At a minimum, we think that there must be evidence from which the factfinder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered. We do not require a mathematically precise table equating levels of exposure with levels of harm, but there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains before there can be a recovery."); <u>Whatley v. Cardinal Pest Control</u>, 388 So.2d 529, 531-32 (Ala. 1980) (allegations that injury was caused by exposure to pesticide was not a matter within the common

knowledge or experience of lay jurors, and because plaintiffs offered no causation evidence in

contradiction to defendant's expert opinion that the exposure could not and did not cause

plaintiff's alleged injury, plaintiff's evidence was insufficient to raise a genuine issue of the

requisite material fact of causation).

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Defendant Tate & Lyle Sucralose, Inc.

respectfully requests that this Court grant it summary judgment as to all remaining causes of

action in Plaintiffs' Fourth Amended Complaint and for such further relief as this Court deems

equitable and just.

Dated:  November 26, 2008

Respectfully submitted,

    /s/ Halron W. Turner
HALRON W. TURNER (TURNH9339)
MARC E. BRADLEY (BRADM9922)
Turner, Onderdonk, Kimbrough,
 Howell, Huggins & Bradley, PA
Post Office Drawer 1389
Chatom, Alabama 36518
Telephone:  (251) 847-2237
Facsimile:  (251) 847-3115

**And**

MICHAEL H. WETMORE (*pro hac vice*)
WILLIAM J. CURTIS (*pro hac vice*)
ROBYN D. BUCK (*pro hac vice*)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
Saint Louis, Missouri 63105
Telephone:  (314) 480-1500
Facsimile:  (314) 480-1505

**Attorneys for Defendant,**
  **Tate & Lyle Sucralose, Inc.**


## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2008, I electronically filed the foregoing document with the Clerk of the Court utilizing the CM/ECF system, which will send notification of such filing to counsel of record as listed below.


        /s/ Halron W. Turner
HALRON W. TURNER
Counsel for Defendant


**Counsel of Record**:

John W. Parker, Esq.
820 S. University Blvd., Suite 2-F
Mobile, Alabama 36609
Telephone:  (251) 341-1020
Facsimile:  (251) 341-1235

Herndon Inge III, Esq.
Post Office Box 40188
Mobile, Alabama 36640
Telephone:  (251) 432-1444
Facsimile:  (251) 432-6941