IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY J. RADCLIFF, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 06-0345-CG-M |
| | ) |
| **TATE & LYLE SUCRALOSE, INC.,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter comes before the court on the defendant, Tate & Lyle Sucralose, Inc.'s ("Tate & Lyle"), renewed motion for summary judgment. (Docs. 191 and 192). The motion seeks summary judgment on the claims and causes of action that survived Tate & Lyle's prior two motions for summary judgment. The plaintiffs filed a written response, opposing the motion (Doc. 216) and defendant replied (Doc. 219). Today, the court heard oral argument from the parties.

This is the third motion for summary judgment in this case. The court ruled on the prior two motions in a single order. (Doc. 176). As far as is relevant to the pending motion, the order on the prior two motions for summary judgment did not grant Tate & Lyle complete summary judgment on Counts One and Five of the operative complaint. (Doc. 176, pp. 8-12). Count One alleges a claim for nuisance. (Doc. 59, pp. 5-8). Count Five seeks injunctive relief based in part on the substantive claim alleged in Count One. (Doc. 59, pp. 13-15).

In support of its prior efforts to obtain summary judgment on Counts One and Five, Tate & Lyle argued that the plaintiffs could not establish that Tate & Lyle proximately caused a nuisance, specifically asserting that the plaintiffs could not show that Tate & Lyle's plant caused

physical injuries to the plaintiffs, diminished the value of the plaintiffs' properties, or interfered with the plaintiffs' use and enjoyment of their properties. (Doc. 176, p. 10). The court disagreed, summarizing its opinion as follows:

> As set forth above, all that the plaintiffs need to show in order to prevail over the defendant's motion for summary judgment is a loss of use and enjoyment of their properties. The plaintiffs testified that an unpleasant odor from Tate & Lyle's plant interferes with their use and enjoyment of their properties. The experts and the plaintiffs disagree about whether Tate & Lyle's plant is the source of the specific odor that the plaintiffs describe. It is up to the jury to sort out the factual differences between the parties. The same holds true for the plaintiffs' claim based on noise. Although plaintiffs' counsel did not focus on noise as the source of a nuisance or specifically rebut Tate & Lyle's expert testimony on the issue in the summary judgment briefing, many of the plaintiffs testified that noise from Tate & Lyle's plant was one of the sources of complaint. As such, the motion for summary judgment is **DENIED** as to the nuisance claim as a whole because the facts in the record show that there is a genuine issue of material fact as to whether Tate & Lyle caused a nuisance.

(Doc. 176, pp. 11-12, citation and footnote omitted).

In a footnote, the court mooted Tate & Lyle's motion to strike an affidavit of plaintiffs' expert, James R. Montgomery ("Montgomery"), because the court did not consider the affidavit in its order on summary judgment. (Doc. 176, p. 11 n.3). The court also noted that Tate & Lyle moved to exclude Montgomery's expert opinion, but that the motion to exclude was neither ripe nor directed at Montgomery's opinion for purposes of summary judgment. (Doc. 176, p. 11 n.3). After briefing was completed on the motion to exclude Montgomery's expert opinion, the court granted the motion to exclude Montgomery's opinion, holding that he used an unreliable methodology to develop his opinion. (Doc. 190). Montgomery opined that Tate & Lyle's plant produced enough chemical emissions to cause a nuisance based on odor and to cause certain physical symptoms. (Doc. 121, p. 4). He did not offer any opinion regarding the amount of noise generated at Tate & Lyle's plant. (Doc. 121).

The motion at bar argues that the plaintiffs can no longer establish causation without Montgomery's expert testimony.

I.      **SUMMARY JUDGMENT STANDARD**

As set out in more detail in the order ruling on the two prior motions for summary judgment, Rule 56© of the Federal Rules of Civil Procedure provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

The movant bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  Id.

"To survive a motion for summary judgment, a plaintiff need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that

requires a trial." Samples on behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). See also Cohen v. United Am. Bank, 83 F.3d 1347, 1349 (11th Cir. 1996) ("There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor."). Viewing the evidence in the light most favorable to the plaintiffs, the court must decide whether a reasonable fact-finder "could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." Samples, 846 F.2d at 1330. See also Jeffery v. Sarasota White Sox, 64 F.3d 590, 594 (11th Cir. 1995) ("Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.").

## II. ANALYSIS

### A. Nuisance Based on Noise

With respect to noise, Tate & Lyle's motions for summary judgment focus on expert testimony that tends to show that Tate & Lyle's plant is not as loud as other sources of noise near the plaintiffs' properties, primarily a railroad and automobile traffic. (Doc. 142, pp. 34-35; Doc. 163, pp. 8-9; Doc. 192, p. 11). Due to the fact that the railroad and the automobile traffic produce more noise at the plaintiffs' properties than does Tate & Lyle's plant, the argument goes, any noise associated with the plant cannot affect the sensibilities of "an ordinary reasonable man" pursuant to Alabama's nuisance statute, ALA. CODE § 6-5-120 (1975).

With the exception of three plaintiffs, the court's review of the deposition transcripts revealed that the plaintiffs distinguished the noise from the plant from the noises from the

railroad and automobile traffic. (Doc. 176, p. 19, granting summary judgment against three plaintiffs on their claims for nuisance based on noise). Although the railroad and the automobile traffic bothered some of the plaintiffs, so too did the noise from the plant. Based on this testimony and the fact that Tate & Lyle's motion did not dispute that the noise the plaintiffs attributed to the plant actually originated at the plant, the court found that a genuine issue of material fact existed in this regard when it ruled on the prior two motions for summary judgment. (Doc. 176, pp. 11-12).

Considering the renewed motion for summary judgment, this court's rejection of Montgomery's opinion has no bearing on the plaintiffs' ability to establish a nuisance based on noise because Montgomery never articulated an opinion on that subject. Tate & Lyle has not offered a convincing reason for the court to change course on its prior summary judgment ruling with regard to nuisance based on noise[1]. Consequently, the motion is **DENIED** insofar as it seeks summary judgment on the claims of nuisance based on noise that survived the prior two motions for summary judgment.

### B. Nuisance Based on Odor

Unlike Tate & Lyle's argument regarding the alleged nuisance based on noise, Tate & Lyle's argument in the prior motions for summary judgment on the alleged nuisance based on odor squarely raised the issue of whether the chemicals that caused the odor the plaintiffs described originated at Tate & Lyle's plant. The plaintiffs cited Montgomery's expert opinion as

---

[1]At oral argument, Defendant raised, for the first time, an argument that there is no proof of causation of the noise. Prior to today, there was no apparent dispute that the noised plaintiffs complained of emanated from the Tate & Lyle plant. The only dispute was whether or not the noise rose to the "nuisance" level. This new assertion of lack of causation comes too late.

contrary evidence in their response to Tate & Lyle's argument on causation. (Doc. 161).

Tate & Lyle focuses on Satterfield v. J.M. Huber Corp., 888 F. Supp. 1567 (N.D. Ga. 1995), and Layton v. Yankee Caithness Joint Venture, 774 F. Supp. 576 (D. Nev. 1991), to support its argument that the plaintiffs cannot establish causation without an expert.

In Satterfield, the plaintiffs brought several causes of action against the owner of a plant located approximately 4,800 feet from their properties. Satterfield, 888 F. Supp. at 1569. The defendant sought summary judgment on the nuisance claim based on the argument that the plaintiffs lacked scientific or expert testimony regarding whether the defendant's plant caused a nuisance. Id. at 1572. The plaintiffs argued that they established causation when they testified that they watched smoke from the defendant's plant invade their property. Id. The court held for the defendant. In light of "numerous alternative sources for" the relevant nuisance and "the considerable distance between defendant's plant and plaintiffs' residence," the court held that the plaintiffs' "lay testimony is not 'rationally based on the perception of the witness.' FED. R. EVID. 701." Id.

The court also referenced other "significant causation problems cited above" to support summary judgment on the nuisance claim. Id. Presumably, the court was referring to its prior references to the absence of expert testimony establishing that the defendant's plant caused any damages to the plaintiffs, id. at 1570, 1572 ("Beyond sheer lay speculation, there is no evidence whatsoever that emissions from defendant's plant caused damage to plaintiffs' property." "[P]laintiffs have . . . failed to introduce any form of expert testimony or scientific evidence that any invasions on their property originate with defendant's plant."), and the defendant's identification of other potential causes for the alleged problems, id. at 1570-72 (listing the other

potential causes and citing medical testimony to support the conclusion that these other causes might be the culprits).

In Layton, the plaintiffs sued the operator of a geothermal power plant that was located several miles from the plaintiffs' properties. Layton, 774 F. Supp. at 577. Under the law as applied in that case, the plaintiffs argued that the defendant's plant caused a nuisance because the "invasion [wa]s both intentional and unreasonable." Id. at 577-78. The court granted summary judgment to the defendant because the plaintiffs were unable to establish that the defendant's plant emitted enough hydrogen sulfide to cause a nuisance. Id. at 577-79. Although the plaintiffs established that the plant emitted "some hydrogen sulfide and that some hydrogen sulfide is present in the ambient air around their [the plaintiffs'] homes," the plaintiffs' properties, like the plaintiffs' properties in Satterfield, could have been inundated with hydrogen sulfide from several other, identified, sources. In particular, the plaintiffs could not establish causation because the area around their properties contained "dozens of natural hot springs which emit hydrogen sulfide." Id. at 578. The court explained, "[g]iven that a number of possible sources of hydrogen sulfide exist, the doctrine of res ipsa loquitur is inapplicable. Neither the Plaintiffs nor the court can simply assume that the smell surrounding Plaintiffs' homes emanates from the [defendant's] plant." Id.

Although there is evidence that the plaintiffs smell an offensive odor, consistent with the odor of chemicals that are a by-product of defendant's production process, which odor interferes with their use and enjoyment of their properties and, that, among other things, they suffer burning sensations when they smell the odor, the plaintiffs do not direct the court to any admissible evidence showing the amount and/or frequence of relevant chemical emissions from

7

Tate & Lyle's plant, the presence of the relevant chemicals at their properties, or explaining how any chemicals Tate & Lyle's plant emits traveled to the plaintiffs' properties. Likewise, there is no evidence of the amount of chemical emissions it would take to cause the symptoms plaintiffs suffer, or that the chemicals were emitted in such amounts. Also, there is evidence that there are other chemical plants in the area, although there is no direct argument that those plants emit chemicals that could cause the odor about which the plaintiffs complain. The plaintiffs argue that there are thousands of <u>potential</u> points of "fugitive" chemical emissions from the plant, but this is a far cry from showing that Tate & Lyle's plant <u>actually</u> emits enough chemicals to cause a nuisance.

Without the benefit of Montgomery's testimony, there is no evidence that any chemicals that Tate & Lyle may emit could produce the odor that the plaintiffs describe at the plaintiffs' properties. Without evidence of the level of chemical emissions at Tate & Lyle's plant, evidence of the presence of the relevant chemicals at the plaintiffs' properties, or evidence showing how any emissions from Tate & Lyle's plant traveled to the plaintiffs' properties in sufficient quantities to cause a nuisance, the plaintiffs' case fails on causation. <u>E.g.</u>, <u>Tipler v. McKenzie Tank Lines</u>, 547 So. 2d 438, 440-41 (Ala. 1989) (explaining that a plaintiff must establish causation to prevail on a nuisance claim). The renewed motion for summary judgment is **GRANTED** as to all claims for nuisance based on odor and its related consequences.

### III.     CONCLUSION

The renewed motion for summary judgment is **DENIED** insofar as it seeks judgment on all claims for nuisance based on noise and is **GRANTED** insofar as it seeks judgment on all claims for nuisance based on odor and its related consequences.

**DONE and ORDERED** this 4th day of December, 2008.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE